**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| NICHOLAS HARRISON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:18-CV-00641-LMB-IDD |
| JAMES N. MATTIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

I.      Defendants' applicable policies ............................................................................ 2

II.     Procedural background ........................................................................................ 4

ARGUMENT ............................................................................................................. 6

I.      PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE
        DENIED BECAUSE THERE IS NO POLICY REQUIRING THE IMMEDIATE
        DISCHARGE OF SERVICE MEMBERS DEEMED TO BE NON-
        DEPOLOYABLE .............................................................................................. 6

        A.      Plaintiffs cannot succeed on the merits of their claims because the policy
                they are challenging does not exist and, in any event, any such challenge
                would be non-justiciable .......................................................................... 7

                1.      No policy exists that requires the automatic discharge of HIV-
                        positive Service members ............................................................. 7

                2.      Challenges to Defendants' decisions about the deployability of
                        Service members are non-justiciable ............................................ 10

                        a. Threshold elements:  violation of constitutional right and
                        exhaustion of remedies .............................................................. 11

                        b. Four-factor balancing test .................................................... 12

        B.      Because they face no threat of being imminently discharged, Plaintiffs
                have not demonstrated the existence of an irreparable harm ................. 14

        C.      The remaining elements of the preliminary injunction test weigh against
                granting Plaintiffs' motion ....................................................................... 18

II.     THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE
        DEFENDANTS' COMMISSIONING POLICY IS NOT JUSTICIABLE AND
        BECAUSE IT NEVERTHELESS SATISFIES RATIONAL BASIS REVIEW ............ 19

        A.      Plaintiffs' Complaint challenges only Defendants' Commissioning Policy ......... 19

        B.      Plaintiffs' challenge to the Commissioning Policy is non-justiciable ................. 20

        C.      Even if justiciable, Plaintiffs' challenge to the Commissioning Policy must
                be dismissed because the policy passes muster under rational basis review ........ 23

i

CONCLUSION..................................................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*Adell v. Hepp,*
 No. 17-CV-448-JPS, 2017 WL 1393728 (E.D. Wis. Apr. 18, 2017)........................................ 24

*Al-Abood v. El-Shamani,*
 71 F. Supp. 2d 511 (E.D. Va. 1999)........................................................................................ 14

*Am. Fed. of Gov't Emp., AFL-CIO v. Nimmo,*
 711 F.2d 28 (4th Cir. 1983)...................................................................................................... 12

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009).................................................................................................................. 23

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007).................................................................................................................. 23

*Bonds v. Leavitt,*
 629 F.3d 369 (4th Cir. 2011).................................................................................................... 23

*Brandon v. Carmichael,*
 No. 15CV2814 WQH (PCL), 2016 WL 8731115 (S.D. Cal. Oct. 28, 2016)............................ 24

*Christopher Phelps & Assocs., LLC v. Galloway,*
 492 F.3d 532 (4th Cir. 2007)...................................................................................................... 6

*City of Cleburne v. Cleburne Living Center,*
 473 U.S. 432 (1985).................................................................................................................. 24

*Culbreth v. Ingram,*
 389 F. Supp. 2d 668 (E.D.N.C. 2005)...................................................................................... 13

*Doe v. Marsh,*
 No. 89-1383-OG, 1990 U.S. Dist. LEXIS 1442 (D.D.C. Feb. 8, 1990) .................................. 24

*Doe v. Univ. of Md. Med. Sys. Corp.,*
 50 F.3d 1261 (4th Cir. 1995).................................................................................................... 24

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*
 92 F.3d 1486 (9th Cir. 1996)............................................................................................... 16, 17

*FCC v. Beach Commc'ns, Inc.,*
 508 U.S. 307 (1993).................................................................................................................. 25

*Flast v. Cohen,*
 392 U.S. 83 (1968)...................................................................................................................... 9

*Francis v. Giacomelli,*
   588 F.3d 186 (4th Cir. 2009)..................................................................... 23

*Giarratano v. Johnson,*
   521 F.3d 298 (4th Cir. 2008)............................................................... 26, 27

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ............................................................................... 10, 13

*Goldman v. Weinberger,*
   475 U.S. 503 (1986) ........................................................................... 10, 18

*Guerra v. Scruggs,*
   942 F.2d 270 (4th Cir. 1991)................................................ 11, 12, 13, 26

*Harkness v. Sec'y of Navy,*
   858 F.3d 437 (6th Cir. 2017)..................................................................... 13

*Hohe v. Casey,*
   868 F.2d 69 (3d Cir. 1989)........................................................................ 17

*Horn v. Schlesigner,*
   514 F.2d 549 (8th Cir. 1975)..................................................................... 22

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) .................................................................................. 16

*Legend Night Club v. Miller,*
   637 F.3d 291 (4th Cir. 2011)..................................................................... 17

*Lucas v. Henrico Cty. School Bd.,*
   822 F. Supp. 2d 589 (E.D. Va. 2011)........................................................ 21

*Manning v. Hunt,*
   119 F.3d 254 (4th Cir. 1997)....................................................................... 6

*Mindes v. Seaman,*
   453 F.2d 197 (5th Cir. 1971).......................................................... 11, 14, 21

*Mlaska v. Schicker,*
   No. 15-CV-00918-MJR, 2015 WL 6098733 (S.D. Ill. Oct. 16, 2015) .................... 24

*Mofield v. Bell,*
   3 F. App'x 441 (6th Cir. 2001)................................................................... 24

iv

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................... 18

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) ................................................................................... 25

*North Dakota v. United States*,
    495 U.S. 423, (1990) ............................................................................. 10

*Orloff v. Willoughby*,
    345 U.S. 83 (1953) ........................................................................ *passim*

*Perkins v. Kansas Dep't of Corr.*,
    No. CIV.A.97-3460-GTV, 2004 WL 825299 (D. Kan. Mar. 29, 2004) ................... 24

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ................................................................. 23

*Salazar v. Buono*,
    559 U.S. 700 (2010) ............................................................................... 6

*Sampson v. Murray*,
    415 U.S. 61 (1974) ................................................................................ 14

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975) .............................................................................. 10

*Shenandoah Valley Network v. Capka*,
    669 F.3d 194 (4th Cir. 2012) ................................................................... 9

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .............................................................. 17

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) ...................................................................... 19, 20

*Thomasson v. Perry*,
    80 F.3d 915 (4th Cir. 1996) .................................................................. 18

*United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) .............................................................................. 20

*United States v. Santiago-Martinez*,
    58 F.3d 422 (9th Cir. 1995) ................................................................... 24

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
    587 F.3d 464 (1st Cir. 2009) ................................................................. 17

*Verderamo v. Mayor and City Council of, Balt.*,
    4 F. Supp. 3d 722 (D. Md. 2014) ............................................................. 25

*Voge v. United States*,
    844 F.2d 776 (Fed. Cir. 1988) ................................................................. 10

*Werts v. Greenwood Cty. Det. Ctr.*,
    No. CIV.A.4:08-1852-TLW-TER, 2008 WL 5378251 (D.S.C. Dec. 23, 2008) ...................... 24

*Wilkins v. Gaddy*,
    734 F.3d 344 (4th Cir. 2013) ................................................................. 25

*Wilson v. Lynch*,
    835 F.3d 1083 (9th Cir. 2016) ................................................................ 24

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .......................................................................... *passim*

## STATUTES

5 U.S.C. § 3331 ................................................................................. 28
10 U.S.C. § 502 ................................................................................. 28
10 U.S.C. § 505 ............................................................................. 26, 28
10 U.S.C. § 531 ................................................................................. 21
10 U.S.C. § 532 ............................................................................. 21, 27
10 U.S.C. § 801 ................................................................................. 28
10 U.S.C. § 822 ................................................................................. 28

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ..................................................................... 19, 20
Fed. R. Civ. P. 12(b)(6) ......................................................................... 19

## FEDERAL REGULATIONS

Army Reg. 600-110 ............................................................................... 4
DoDI 1332.14 ................................................................................... 12
DoDI 1332.18 ................................................................................... 12
DoDI 1332.30 ................................................................................... 12
DoDI 1332.45 .............................................................................. *passim*
DoDI 6130.03 ................................................................................. 2, 3
DoDI 6485.01 ............................................................................. 3, 4, 28
DoDI 6490.07 ............................................................................... 3, 26

**OTHER AUTHORITES**

Mem. from Robert L. Wilkie, Under Secretary of Defense for Personnel and Readiness, to the
Secy's of the Military Departments, *et al*. (Feb. 14, 2018) . ................................................. *passim*

Jason M. Blaylock, *et al.*, "HIV Preexposure Prophylaxis in the U.S. Military
 Services – 2014-2016," Centers for Disease Control and Prevention (May 25, 2018) .............. 27

## INTRODUCTION

Based on the common-sense notion that individuals who enlist in the military must be medically fit and capable of serving, Defendants[1] have established policies governing the accession and retention of individuals who have tested positive for the human immunodeficiency virus ("HIV"). These policies prohibit individuals who are HIV-positive from enlisting or being appointed to a position within the military, but they do not require the discharge of Service members who first test positive after they enter the armed forces. Plaintiffs, Army Sergeant Nicholas Harrison and the advocacy group OutServe-SLDN, filed suit, contending that Defendants' policy of not permitting HIV-positive individuals to commission as officers violates their right to equal protection. In addition, Plaintiffs filed a motion for a preliminary injunction, asserting that Defendants' policies require the imminent discharge of HIV-positive Service members.

Plaintiffs' challenge in this case is without merit and should be dismissed at the pleading stage for two distinct reasons. First, Plaintiffs' claim that Defendants' restriction on HIV-positive Service members becoming commissioned officers involves quintessential military judgment about the qualifications necessary for appointment as a commissioned officer and is thus non-justiciable. Second, even if the claim is justiciable, it should still be dismissed as a matter of law because the challenged policy survives rational basis review.

Plaintiffs' preliminary injunction motion is likewise without merit and should also be denied. That motion is premised on Plaintiffs' misguided belief that Defendants have classified all HIV-positive Service members as being non-deployable and subject to automatic separation

---

[1] Defendants in this case are Defense Secretary James N. Mattis, in his official capacity, Army Secretary Mark Esper, in his official capacity, and the Department of Defense ("DoD") (collectively, "Defendants").

from the military, which is not in fact the case.  Rather, under a recent policy issued subsequent to the filing of Plaintiffs' motion, the Military Departments have the discretion to determine what constitutes non-deployability and whether non-deployable Service members should be retained. At present, there is no policy at either the DoD or Military Department level that requires the automatic discharge of Service members solely because of their HIV status.  Plaintiffs' motion accordingly fails all four factors of the preliminary injunction test and should be denied.

## **BACKGROUND**

## I.   **DEFENDANTS' APPLICABLE POLICIES**

DoD and the Military Departments have multiple policies governing Service members with medical conditions, including those with HIV.  Department of Defense Instruction ("DoDI") 6130.03 ("Medical Standards for Appointment, Enlistment, or Induction into the Military Services") requires that individuals considered for appointment, enlistment, or induction into the Military Services satisfy certain medical standards.  Those standards include ensuring that each individual be:

- Free of contagious diseases that may endanger the health of other personnel;
- Free of medical conditions or physical defects that may reasonably be expected to require excessive time lost from duty for necessary treatment or hospitalization, or may result in separation from the Military Service for medical unfitness;
- Medically capable of satisfactorily completing required training and initial period of contracted service;
- Medically adaptable to the military environment without geographical area limitations; and
- Medically capable of performing duties without aggravating existing physical defects or medical conditions.

DoDI 6130.03 § 1.2(c).  Individuals who do not meet these physical and medical standards are eligible to be considered for a medical waiver.  *Id*. § 1.2(d).  DoDI 6130.03 further identifies medical conditions across twenty-nine different body systems that DoD considers to be

disqualifying for military service.  *Id*. § 5.  Laboratory evidence of HIV infection is listed as a disqualifying "systemic condition."  *Id*. § 5.23(b).

DoD has also issued DoDI 6485.01 ("Human Immunodeficiency Virus (HIV) in Military Service Members"), which sets forth the specific policy concerning the identification, surveillance, and management of Service members infected with HIV as well as for the prevention of further transmission of the disease.  Under this policy, individuals with laboratory evidence of HIV infection are ineligible for "appointment, enlistment, pre-appointment, or initial entry training" in the military, pursuant to DoDI 6130.03.  DoDI 6485.01 § 3(a).  This policy thus precludes individuals who are HIV-positive from both enlisting in the military and from being appointed to positions within the military, including appointment as a commissioned officer.  *Id*.  All applicants for appointment, enlistment, and induction are screened for HIV infection, and all active-duty and reserve component personnel are routinely screened every two years.  *Id*. Enclosure 3 § 1(a), (c).  Active-duty and reserve component Service members who test positive are not involuntarily separated from the military but are instead referred for "appropriate treatment and a medical evaluation of fitness for continued service in the same manner as a Service member with other chronic or progressive illness."  *Id*. Enclosure 3 § 2(c)-(d).  If determined to be fit for duty, active-duty Service members who are HIV-positive are permitted to serve "in a manner that ensures access to appropriate medical care."  *Id*. Enclosure 3 § 2(c).  HIV-positive Service members are not permitted to deploy absent the granting of a waiver.  *See* DoDI 6490.07 ("Deployment-Limiting Medical Conditions for Service Members and DoD Civilian Employees") § 4(c) ("Individuals with the conditions in Enclosure 3 [one of which is HIV], based on medical assessments in accordance with Enclosure 2 and Reference (l), shall not deploy unless a waiver

can be granted . . . ."); *id.* Enclosure 3 § (e)(2) (listing HIV infection as a medical condition precluding contingency deployment).

On February 14, 2018, the Under Secretary of Defense for Personnel and Readiness ("USD(P&R)") issued interim policy guidance concerning the retention of non-deployable Service members. That guidance stated that "[s]ervice members who have been non-deployable for more than 12 consecutive months, for any reason, will be processed for administrative separation . . . ." *See* Mem. from Robert L. Wilkie, Under Secretary of Defense for Personnel and Readiness, to the Secy's of the Military Departments, *et al.* (Feb. 14, 2018) (the "February 14, 2018 Memorandum"), ECF No. 26-1. On July 30, 2018, DoD issued DoDI 1332.45 ("Retention Determinations for Non-Deployable Service Members"), which incorporates and cancels the February 14, 2018 Memorandum. This policy states that Service members who are considered non-deployable for more than twelve consecutive months shall be referred for a retention determination by their respective Military Department. DoDI 1332.45 § 1.2(b)(1). Service members who do not satisfy the retention determination are then referred to the Disability Evaluation System or are initiated for administrative separation, as appropriate, and pursuant to established procedures. *Id.* § 1.2(b)(2). Importantly, the DoDI gives each Military Department the discretion to determine what constitutes "non-deployability" and to make determinations about whether a Service member should be retained. *Id.* § 2.4(a)(2)-(3).

The Military Departments have established HIV-related policies consistent with these DoD instructions. For example, the Army (the branch of the military to which Plaintiff Harrison belongs) makes HIV-infected personnel ineligible for enlistment or appointment for either active duty or reserve duty, but prohibits the separation of infected soldiers solely due to HIV status. *See* Army Reg. 600-110, § 1-16(a), (e). HIV-positive soldiers are ineligible to serve outside of the

4

United States (including Alaska, Guam, Hawaii, Puerto Rico, and the U.S. Virgin Islands) absent a medical waiver. *Id*. § 1-16(f).

## II.     PROCEDURAL BACKGROUND

Plaintiffs brought suit in the instant action on May 30, 2018. *See generally Compl.*, ECF No. 1. Although Plaintiffs discuss various HIV-related policies in their Complaint, their claim centers on the experience of Plaintiff Harrison, a sergeant in the Army who was diagnosed in 2012 as being HIV-positive. *Id*. ¶¶ 40, 47. In 2013, Plaintiff Harrison applied for a position in the Judge Advocate General's ("JAG") office for the National Guard in Washington, D.C., but his application was ultimately rejected pursuant to DoDI 6485.01 § 3(a) (the "Commissioning Policy"), which precludes HIV-positive Service members from commissioning as officers. *Id*. ¶ 63. Plaintiff Harrison's request for a medical waiver from the Chief Surgeon of the Army National Guard as well as his request for an exception to policy from USD(P&R) were denied, with the latter citing the Commissioning Policy as the justification for the denial. *Id*. ¶¶ 55, 63. Plaintiffs contend that this policy discriminates against individuals living with HIV in violation of their equal protection rights, and they seek both an injunction of "any separation, discharge, adverse action, or denial of promotion, reenlistment, continuation of service, accession, or appointment" due to HIV status. *Id*. ¶¶ 71-78, Prayer for Relief ¶ 2. In addition, Plaintiffs request that the Court require the Army to commission Plaintiff Harrison as a JAG officer with the rank of captain. *Id*., Prayer for Relief ¶ 3. Plaintiff OutServe-SLDN does not allege any injury to itself as an organization but instead asserts that it is representing "the interests of [the group's] members currently living with HIV, including Sgt. Harrison, as well as those who may acquire HIV in the future, and therefore are or will be adversely affected by the challenged policies and regulations." *Id*. ¶ 70.

On July 19, 2018, prior to Defendants' deadline to respond to the Complaint, Plaintiffs filed a Motion for Preliminary Injunction. Plaintiffs' motion hinges on a concern separate and apart from that raised in the Complaint. Specifically, Plaintiffs interpret the February 14, 2018 Memorandum[2] as requiring the Military Departments to begin processing and discharging non-deployable Service members no later than October 1, 2018. *See* Mem. in Supp. of Pls.' Mot. for a Prelim. Inj. ("Pls.' Mot.") at 27, ECF No. 26. Although Plaintiffs do not allege that Plaintiff Harrison himself faces any immediate threat of being discharge, they suggest that any HIV-positive Service member classified as non-deployable is at risk of imminent discharge and request that the Court issue a preliminary injunction preventing any such discharges from occurring. *Id*. at 2. Plaintiffs filed their motion prior to Defendants' issuance of DoDI 1332.45, which sets forth Defendants' current policy regarding the retention determinations of Service members deemed to be non-deployable.

## ARGUMENT

I.    **PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE THERE IS NO POLICY REQUIRING THE IMMEDIATE DISCHARGE OF SERVICE MEMBERS DEEMED TO BE NON-DEPOLOYABLE**

Plaintiffs have moved for a preliminary injunction, asking this Court to "preserve the status quo by suspending implementation of the [February 14, 2018 Memorandum] as applied to any Service member classified as non-deployable based solely on their HIV status." Pls.' Mot. at 2. "A preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (internal quotation marks and alteration omitted). In seeking such an injunction, Plaintiffs

---

[2] Plaintiffs refer in their motion to this Memorandum as the "DOGO Policy." That term is not used by DoD.

must establish that (1) they are likely to succeed on the merits of their claim, (2) they are likely to suffer irreparable harm in the absence of an injunction, (3) the balance of the equities tips in their favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). An injunction "is not granted as a matter of course," *Salazar v. Buono*, 559 U.S. 700, 715 (2010), and the decision "whether to grant the injunction still remains in the equitable discretion of the district court" even when a plaintiff has made the requisite showing, *see Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citation and internal brackets and quotation marks omitted). Plaintiffs bear the burden of showing that they are entitled to an injunction. *See Manning*, 119 F.3d at 263.

In this case, none of the four factors weighs in favor of the injunctive relief sought by Plaintiffs. To begin, Plaintiffs cannot succeed on the merits of their claims for the simple reason that none of Defendants' current policies require the immediate discharge of HIV-positive Service members. For similar reasons, Plaintiffs cannot make the requisite showing that they would be irreparably harmed in the absence of an injunction. Plaintiffs' claims also fail because a challenge to such a policy would nonetheless be non-justiciable. Because there is no policy requiring the automatic discharge of HIV-positive Service members, Plaintiffs' fears about being separated from service are unfounded. Lastly, the public interest and balance of the equities likewise weigh against issuing an injunction. Plaintiffs' motion should accordingly be denied.

**A.   Plaintiffs cannot succeed on the merits of their claims because the policy they are challenging does not exist and, in any event, any such challenge would be non-justiciable**

    1.   <u>No policy exists that requires the automatic discharge of HIV-positive Service members</u>

As a basic matter, Plaintiffs cannot prevail on the merits of their claim in their preliminary injunction motion because the policy Plaintiffs are challenging in their motion does not exist.

Plaintiffs' motion challenges the February 14, 2018 Memorandum, which set forth interim guidance concerning the reporting and retention of non-deployable Service members. *See* February 14, 2018 Memorandum. That memorandum states that Service members who, for any reason (other than pregnancy or post-partum), have been non-deployable for twelve or consecutive months will be processed for administrative separation. *Id*. The memorandum makes clear that it is establishing interim guidance that is to remain in effect until DoD issues a DoD Instruction on this issue. *Id*. Because all Military Departments, aside from the Navy, require that HIV-positive Service members serve in the continental United States (unless a waiver is granted), Plaintiffs' motion is premised on their fear that all such members will be deemed "non-deployable" and therefore discharged pursuant to the policy. *See* Pls.' Mot. at 27 ("Implementation of the [February 14, 2018 Memorandum] is likely to result in the discharge of almost all Service members living with HIV" because the policy "requires the branches of the military to begin processing and discharging members who fall within its parameters by October 2018.").

But Plaintiffs' articulation of Defendants' current policy is incorrect. On July 30, 2018, USD(P&R) issued DoDI 1332.45, which supersedes the February 14 Memorandum. Contrary to Plaintiffs' interpretation of the February 14 Memorandum, DoDI 1332.45 does not state that Service members who have been non-deployable for twelve or more months must be discharged; rather, it requires non-deployable members to be evaluated for a retention determination by their respective Military Department. *See* DoDI 1332.45 § 1.2(b). Nor is it the case that under DoDI 1332.45 HIV-positive Service members are categorically deemed to be non-deployable. Rather, the DoDI leaves to the discretion of the Military Departments to determine the deployability status of Service members. *Id*. § 2.4(a)(1). Thus, under the current DoD policy, not only are HIV-positive members *not* categorically deemed to be non-deployable, but even if they were, that still

would not result in their automatic discharge from the military.  Such Service members would instead be referred to either the DES or an administrative separation system and processed in accordance with the applicable procedures.  Plaintiffs' articulation of the policy in their preliminary injunction motion is simply not correct.

For their part, the Military Departments likewise have not issued any policies requiring the *per se* discharge of HIV-positive Service members due to non-deployability.  The Army, for example, is currently conducting a policy review to assess how best to implement the directives in DoDI 1332.45, including whether HIV-positive soldiers should be considered non-deployable for purposes of the DoDI or "deployable with limitations."  *See* Decl. of Lisa Lute ¶¶ 7, 9.  If the Army decides that HIV-positive soldiers should be deemed "deployable with limitations," there would be no referral for a retention review.  *Id.* ¶ 9.  Even if the Army decides that soldiers are non-deployable due to their HIV status, the Army would simply conduct retention reviews for each soldier and would retain the authority to make a retention assessment on a case-by-case basis.  *Id.* Thus, under either possible outcome, HIV-positive soldiers will not be automatically discharged from the Army.

Similarly, the Air Force's current policy is not to discharge members solely on the basis of HIV infection.  *See* Decl. of Martha Soper ¶ 9(a).  Although the Air Force is limited in its ability to deploy HIV-positive airmen to certain regions due to the policies of other DoD components as well as prohibitions imposed by host countries, it does deploy HIV-positive airmen to Latin American countries as well as domestically.  *Id.* ¶ 9(c).  And even if the Air Force were to decide that HIV-positive airmen should be subjected to a retention review, the outcome of such a review is not pre-ordained.  Notably, since November 2017, of the eleven HIV-positive airmen who were reviewed at the Secretary level for retention, nine were returned to duty.  *Id.*

Given the state of Defendants' current policies, Plaintiffs' motion asks the Court to enjoin a policy that Defendants are not undertaking.  This the Court cannot do:  the case-or-controversy requirement in Article III of the Constitution limits the authority of courts to hear "actual dispute[s] between adverse parties."  *See Shenandoah Valley Network v. Capka*, 669 F.3d 194, 201 (4th Cir. 2012).  To rule in the absence of an actual dispute would mean issuing an advisory opinion, which federal courts are expressly precluded from doing.  *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("The implicit policies embodied in Article III . . . impose the rule against advisory opinions on federal courts," which are limited to hearing "those disputes . . . which are traditionally thought to be capable of resolution through the judicial process.").  This Court accordingly lacks authority to entertain Plaintiffs' challenge to the non-existent policy described in their motion.  *See Shenandoah Valley*, 669 F.3d at 202 ("Because such a dispute is lacking here—and because we cannot issue an advisory opinion—we have no authority to adjudicate this suit.").

2.   <u>Challenges to Defendants' decisions about the deployability of Service members are non-justiciable</u>

In addition, Plaintiffs' motion should be denied because their challenge to Defendants' deployment policies is non-justiciable.  Courts extend great deference to the military when called to review the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which consist of "essentially professional military judgments."  *Winter*, 555 U.S. at 24 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), citing *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)).  As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence."  *Gilligan*, 413 U.S. at 10; *see also North Dakota v. United States*, 495 U.S. 423, 443, (1990) (noting that when confronted with questions relating to military operations, courts "properly defer to the judgment of those who must lead our Armed Forces in battle").  "The laws

and traditions governing th[e] [military] discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past." *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975).  Under certain circumstances, such as when a Service member challenges his or her deployment or military duty assignment, this deference requires that courts treat such challenges as non-justiciable, even where a constitutional claim is raised.  *See Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) ("[I]t is not within the power of this Court . . . to determine whether specific assignments to duty fall within the basic classification of petitioner."); *see also Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (noting that there are "thousands of . . . routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with.").  As discussed below, Plaintiffs' challenge to Defendants' decisions about which Service members should be deployed to combat zones or other military operations presents precisely those types of circumstances.

In evaluating the justiciability of challenges to military decision-making, the Fourth Circuit has adopted the test announced by the Fifth Circuit in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).  Pursuant to that test, Service members must first satisfy two threshold elements before a court can determine whether review of their claims is appropriate: (a) they allege a violation of a recognized constitutional right, a federal statute, or a military regulation; and (b) they have exhausted available intraservice remedies.  *Guerra v. Scruggs*, 942 F.2d 270, 276 (4th Cir. 1991) (citing *Mindes*, 453 F.2d at 201).  If the Service member meets both of these threshold requirements, the Court weighs four factors to determine whether judicial review of the claims is appropriate: (1) the nature and strength of the Service member's claim; (2) the potential injury to the Service member if review is refused; (3) the extent of interference with military functions; and (4) the extent to which military discretion or expertise is involved.  *Id* (citing *Mindes*, 453 F.2d at

201-02).   For the following reasons, Plaintiffs' contention at the center of their preliminary injunction motion is non-justiciable under this test.

      a.    *Threshold elements:  violation of constitutional right and exhaustion of remedies*

Plaintiffs claim that Defendants have violated equal protection principles by issuing a policy memorandum that Plaintiffs interpret as requiring the discharge of HIV-positive Service members.  *See* Pls.' Mot. at 1.  Because Plaintiffs allege the violation of a constitutional right, the first threshold element is satisfied.  The second threshold element is not met, however, because Defendants have established policies providing for review of discharge decisions due to a medical condition.  Under DoDI 1332.45, the Military Departments are directed to undertake a retention review of such members and, if the Department deems it appropriate, refer Service members into the DES or initiate the process for administrative separation.  *Id*. § 1.2(b)(2).  In the event a Service member is referred to the DES or for administrative separation, the member will have the opportunity to challenge any finding requiring separation.  *See* DoDI 1332.18 ("Disability Evaluation System") Enclosure 3 § 3(*l*) (outlining procedural rights for disability hearings, including right to appellate review); DoDI 1332.14 ("Enlisted Administrative Separations") Enclosure 5 (describing procedures for separation, including notice and opportunity for Service member to respond); DoDI 1332.30 ("Commissioned Officer Separations") (setting forth separation procedures for commissioned officers).  Any HIV-positive Service member facing discharge should be required to first complete both the retention review contemplated by DoDI 1332.45, as well as any applicable DES or separation process, before bringing suit.  *See Scruggs*, 942 F.2d at 276 (noting that the exhaustion requirement "applies to cases like the present one where constitutional claims are made"); *see also Am. Fed. of Gov't Emp., AFL-CIO v. Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983) ("[R]equiring exhaustion is particularly appropriate when the

administrative remedy may eliminate the necessity to decide constitutional questions.").  Plaintiffs do not allege that they have completed either the retention review referenced in DoDI 1332.45 or any attendant disability or separation procedures (indeed, Plaintiffs are not facing separation for being HIV-positive, as discussed throughout).  Accordingly, Plaintiffs' challenge to prevent discharges cannot clear the threshold *Mindes* test.

> b.    *Four-factor balancing test*

In any event, the *Mindes* four-factor balancing test makes clear that Plaintiffs' challenge in their preliminary injunction motion is non-justiciable.  With respect to the first factor, Plaintiffs' equal protection challenge to Defendants' policies is so weak that it should be dismissed at the pleading stage.  As discussed above, DoD does not require the discharge of HIV-positive soldiers who are considered non-deployable for more than twelve months but instead has instructed the services to conduct retention reviews of such military personnel, and the Services have the discretion to decide whether HIV status makes a Service member non-depoloyable.  *See* Section I(a)(1).  Nor would Plaintiffs be harmed should the Court declineto enjoin a policy that does not exist.  *See* Section I(b). The first and second *Mindes* factors thus weigh against review.

The third and fourth *Mindes* factors are generally considered together, *see Culbreth v. Ingram*, 389 F. Supp. 2d 668, 676 (E.D.N.C. 2005), and they too weigh against justiciability. These factors concern the type and degree of anticipated interference with the military function and the extent to which the exercise of military expertise or discretion is involved.  Applying these factors, courts have consistently held that the military's decisions about duty assignments, promotions, and discharge are non-justiciable.  *See Orloff*, 345 U.S. at 93-94 (refusing to order the Army to commission or discharge medical specialist who refused to execute loyalty oath);

*Scruggs*, 942 F.2d at 280 (finding as non-justiciable claim seeking to prevent military discharge due to cocaine use).

These same considerations weigh against review of Plaintiffs' challenges here. Defendants' policy regarding deployability and retention of military members deemed to be non-deployable stem from the military's goal of "maximiz[ing] the lethality and readiness of the joint force" and the military's judgment that "all Service members [should be] expected to be deployable." *See* DoDI 1332.45 § 1.1. Decisions about which Service members are fit—including medically fit— to meet the needs of the military and whether those members should be deployed are precisely the type of "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" that are not reviewable by courts. *See Gilligan*, 413 U.S. at 10. This Court should be reluctant to second-guess the military judgment about whether to retain certain Service members and to which location they should be assigned or deployed. *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017) ("[C]ourts are generally reluctant to review claims involving military duty assignments" because of "lack of expertise, deference to the unique role of the military in our constitutional structure, and the practical difficulties that would arise if every military duty assignment was open to judicial review."). The third and fourth *Mindes* factors accordingly compel the conclusion that Plaintiffs' challenge in their preliminary injunction motion is non-justiciable.

**B.     Because they face no threat of being imminently discharged, Plaintiffs have not demonstrated the existence of an irreparable harm**

For reasons similar to those discussed above, Plaintiffs have failed to satisfy the second prong of the preliminary injunction test, the requirement that they demonstrate that they will be irreparably harmed in the absence of an injunction. Demonstrating the existence of an irreparable injury is a necessary showing in order to obtain a preliminary injunction. *See Winter*, 555 U.S. at

14

22 ("Our frequently reiterated standard *requires* plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." (first emphasis added)). Such a showing "can not be either remote or speculative; it must be both actual and immediate." *Al-Abood v. El-Shamani*, 71 F. Supp. 2d 511, 514 (E.D. Va. 1999); *see also Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief."). "Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Plaintiffs' allegations of irreparable harm are insufficient to meet this standard for several reasons. First, and most importantly, Plaintiffs' primary allegation of harm—the discharge of HIV-positive Service members pursuant to Defendants' policy—is simply not true. Plaintiffs' motion is premised on their interpretation of the February 14, 2018 Memorandum as requiring the military departments to begin separation processing, no later than October 1, 2018, Service members who are non-deployable for twelve or more consecutive months. *See* Pls.' Mot. at 27 ("The [February 14, 2018 Memorandum] *requires* the branches of the military to begin processing and discharging members who fall within its parameters by October 2018 . . . ."); *id.* at 28 (speculating that Plaintiff Harrison "could be separated from service under the [February 14, 2018 Memorandum] before this case is even adjudicated"); *id.* at 28-29 (asserting that "the stigma suffered by Plaintiffs in being separated from the military is an irreparable harm that warrants a preliminary injunction"). But Plaintiffs' fears in this regard are unfounded. DoDI 1332.45, which supplanted the interim policy set forth in the February 14, 2018 Memorandum, does not require the automatic discharge of Service members who are considered to be non-deployable for more

15

than twelve months (including, as applicable, Service members with HIV).  Rather, the current policy grants the Military Departments the discretion to determine the deployability status of each Service member.  *See* DoDI 1332.45 § 2.4(a)(1).  Accordingly, each Department, including the Army (to which Harrison and the soldier discussed in Plaintiffs' Exhibit F belong) and the Air Force (to which the airman discussed in Plaintiffs' Exhibit G belongs), have the discretion to determine for themselves whether a Service member's HIV status makes him or her non-deployable for purposes of the policy.  Moreover, even if a Service member is determined to be non-deployable, DoDI 1332.45 does not require that member to be discharged.  The policy instead requires that such Service members be evaluated for a retention determination by their respective Military Departments.  *See* DoDI 1332.45 § 1.1(b).  The absence of any requirement to discharge non-deployable Service members undercuts Plaintiffs' principle claim about being irreparably harmed.

Furthermore, as noted above, neither the Army nor the Air Force currently has a policy requiring the discharge of HIV-positive Service members.  The Army is currently undertaking a policy review in the wake of DoDI 1332.45 being issued, and it is possible that HIV-positive soldiers will be deemed to be "deployable with limitations," in which case they would not be subject to the retention reviews discussed in the DoDI.  *See* Lute Decl. ¶ 9.  In any event, even if the Army determines that HIV-positive soldiers are non-deployable, they will receive an individualized retention review in which the Army will decided, on a case-by-case basis, whether the soldier should remain in the service.  *Id*.  For its part, the Air Force is able to deploy HIV-positive airmen to certain locations and merely assigns them a limitation code indicating that they are required to have medical clearance for any PCS or deployment.  *See* Soper Decl. ¶ 9(c).  Since November 2017, the vast majority of HIV-positive airmen who were assigned this code have been

16

permitted to remain in the Air Force.  *Id.*  In short, neither service maintains a policy that would require the categorical discharge of HIV-positive Service members.

Plaintiffs' reliance on the sealed declarations of two individual Service members, *see* Pls.' Mot. at 27 n. 86, likewise does not establish a threat of irreparable harm.  Having neither been named as Plaintiffs in this case, nor having alleged in their declarations that they are members of OutServe-SLDN, both individuals are third parties to this action.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (noting that associational standing permits an organization "to bring suit on behalf of *its members*" (emphasis added)); Compl. ¶ 70 (asserting that, as a Plaintiff in this case, OutServe-SLDN "represents the interests of *its members* currently living with HIV . . . as well as those who may acquire HIV in the future . . . .").  Plaintiffs cannot rely on any alleged injury to these two non-parties in order to satisfy the irreparable harm prong of the injunction test.  *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that . . . *he* is likely to suffer irreparable harm in the absence of preliminary relief" (emphasis added)); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification.").[3]

Plaintiffs' reliance on the fact that they have asserted a constitutional violation to establish irreparable injury, *see* Pls.' Mot. at 29, is also misplaced.  Although courts have recognized that

_____

[3] In any event, the circumstances described in these declarations fall well short of establishing irreparable harm.  The individual discussed in Plaintiffs' Exhibit G was processed through the Air Force's DES and, in April 2018, received a decision from the Air Force's Formal Physical Evaluation Board ("FPEB") that his HIV status combined with a diagnosis of a different ailment warranted his discharge.  *See* Soper Decl. ¶ 10.  The individual has appealed the FPEB's decision to the Secretary of the Air Force Personnel Council, and the FPEB's decision is stayed pending that review.  *Id.*  Likewise, the individual discussed in Plaintiffs' Exhibit F is not facing discharge because of his HIV status, which is consistent with the Army's policy of not automatically separating HIV-positive soldiers.

there is a strong presumption of harm where a plaintiff alleges a loss of First Amendment rights, *see Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011), this case law does not apply with the same force in cases not involving First or Fourth Amendment claims, *see Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484-85 (1st Cir. 2009) (noting that an automatic finding of irreparable harm for a constitutional violation has been generally reserved for "infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief" and that "it cannot be said that violations of plaintiffs' rights to due process and equal protection automatically result in irreparable harm" (citation and emphasis omitted)); *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm.  Our case law has not gone that far, however."); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm . . . .").  Thus, the fact that Plaintiffs have alleged an equal protection violation cannot by itself establish that they will be irreparably harmed absent an injunction.

In sum, Plaintiffs fall well short of meeting their high burden of establishing that they will be irreparably harmed in the absence of an injunction.  There is no policy, either from USD(P&R) or from the Military Departments that requires the automatic discharge of Service members who are HIV-positive.  Plaintiffs' fears and concerns to the contrary are unfounded.

## C.     The remaining elements of the preliminary injunction test weigh against granting Plaintiffs' motion

Finally, Plaintiffs have not met their burden of "establish[ing] . . . that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20 (citations omitted).  Where the Government is the defendant, these factors "merge" into one. *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, an injunction prohibiting Defendants from

implementing a policy that they do not have would likely cause confusion and miscommunication throughout the service, especially given that some Military Departments are currently in the process of implementing the policy announced by DoDI 1332.45 and creating procedures for that implementation.

The injunction requested by Plaintiffs would have the additional deleterious effect of intruding on inherently military decisions. Courts have long recognized that they must defer to the decision-making authority of military personnel who "have been charged by the Executive and Legislative Branches with carrying out our Nation's military policy." *Goldman v. Weinberger*, 475 U.S. at 508. "Should the judiciary interfere with the intricate mix of morale and discipline that fosters unit cohesion, it is simply impossible to estimate the damage that a particular change could inflict upon national security—there is no way to determine and correct the mistake until it has produced the substantial and sometimes irreparable cost of military failure." *Thomasson v. Perry*, 80 F.3d 915, 925-26 (4th Cir. 1996) (citation and internal brackets and quotation marks omitted); *id*. at 924 (further observing that "[t]he judiciary has no authority to make rules for the regulations of military forces"). An injunction establishing a new policy concerning the deployability or retention of HIV-positive Service members would deprive the military of its ability to determine the appropriate makeup and distribution of its forces, a judgment call for which the military is uniquely situated. *See Winter*, 555 U.S. at 24 (noting that the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" are "essentially professional military judgments"). Thus, the final two factors of the preliminary injunction test also counsel against issuing relief sought by Plaintiffs. Plaintiffs' request for such relief should accordingly be denied.

II.   **THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE DEFENDANTS' COMMISSIONING POLICY IS NOT JUSTICIABLE AND BECAUSE IT NEVERTHELESS SATISFIES RATIONAL BASIS REVIEW**

Not only should the Court deny Plaintiffs' motion for a preliminary injunction, but dismissal of this case under Federal Rule of Civil Procedure 12(b)(1) is warranted because Plaintiffs' challenge to the Commissioning Policy is non-justiciable.  Alternatively, dismissal pursuant to Rule 12(b)(6) is warranted because Plaintiffs' claim fails as a matter of law.

A.   **Plaintiffs' Complaint challenges only Defendants' Commissioning Policy**

As an initial matter, although Plaintiffs have at times construed their claim more broadly to encompass Defendants' policies that "prevent the enlistment, deployment, and commissioning of people with HIV," *see* Pls.' Mot. at 1; *see also* Compl. Prayer for Relief ¶ 2 (referring to "accessions bar or service restrictions"), they would have standing to challenge the Commissioning Policy only.  It is well-established that a plaintiff must have standing in order to sustain a cause of action, and that to establish standing a plaintiff must allege that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  A plaintiff bears the burden of establishing standing and must accordingly "clearly allege facts demonstrating each element."  *Id*. (citation and internal ellipsis omitted).

In this case, the *only* alleged injury identified by Plaintiffs in the Complaint is Plaintiff Harrison's inability to become a commissioned officer, *see* Compl. ¶ 74, an injury that stems from Defendants' application of accession standards to Service members who seek to commission as officers.  Plaintiffs have identified no other alleged injury that arises from any other policy discussed in their Complaint (including any policy related to the discharge of non-deployable Service members).  Indeed, Plaintiffs' Complaint implicitly acknowledges as much.  *See* Comp.

20

¶ 72 (alleging that "Defendants' *accessions policies and practices* discriminate" against HIV-positive individuals).

The fact that OutServe-SLDN is also a named Plaintiff does not alter this conclusion.  As a named Plaintiff, OutServe-SLDN purports to "represent[] the interests of its members currently living with HIV, including Sgt. Harrison."  *See* Compl. ¶ 70.  OutServe-SLDN has not identified any injury to itself, so it can proceed as a Plaintiff only on the basis that one or more of its members is "suffering immediate or threatened injury as a result of the challenged action."  *United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996).  But the only injury to an OutServe-SLDN member identified in the Complaint is that of Plaintiff Harrison, who is allegedly harmed by the Commissioning Policy only.  Accordingly, the Complaint should be read as challenging the Commissioning Policy only.

**B.      Plaintiffs' challenge to the Commissioning Policy is non-justiciable**

Dismissal of this case is warranted pursuant to Rule 12(b)(1) because Plaintiffs' challenge to the Commissioning Policy is non-justiciable.  A Rule 12(b)(1) motion can challenge subject matter jurisdiction either on the face of the complaint or by relying on facts and allegations outside the scope of the complaint.  *See Lucas v. Henrico Cty. School Bd.*, 822 F. Supp. 2d 589, 599 (E.D. Va. 2011).  As the parties bringing the claims in this action, Plaintiffs bear the burden of showing that jurisdiction in this Court is proper.  *Id*.

Pursuant to the same *Mindes* test discussed above in Section I(A)(2), Plaintiffs' challenge to the Commissioning Policy is non-justiciable.  Although the threshold elements of that test do not preclude review of Plaintiffs' challenge, the four-factor balancing test weighs against justiciability.  The first factor weighs against justiciability because Plaintiffs' equal protection challenge to the policy is decidedly weak.  *See* Section II(C).  In addition, the potential injury to

Plaintiffs if the Court declines to review their claim is minimal.  The only injury identified in the Complaint is Plaintiff Harrison's inability to commission as a JAG officer.  Yet the original appointments of commissioned officers within the military, including the commissioning of officers with the rank of captain in the Army, is power expressly reserved for the President alone. *See* 10 U.S.C. § 531(a)(1) ("Original appointments in the grades of second lieutenant, first lieutenant, and captain . . . shall be made by the President alone.").  The Court thus has no power to direct that Plaintiff Harrison be commissioned, as Plaintiffs have requested.  *See Orloff*, 345 U.S. at 90 ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief.").  Plaintiffs therefore cannot said to be harmed when the relief they seek for their asserted injury is one that the Court cannot grant.[4]

The remaining two *Mindes* factors—the type and degree of anticipated interference with military function and the extent to which military expertise is involved—also compel the conclusion that Plaintiffs' claim is non-justiciable.  Plaintiffs' claim challenges Defendants' ability to decide who is able to commission as an officer, a decision that inherently implicates military judgment.  Minimum qualifications for commissioned positions are set by statute, *see* 10 U.S.C. § 532(a), and several of these criteria grant the military wide discretion to determine who is fit.  For example, the military is authorized to assess a member's "good moral character," "physical[] qualif[ications]," and any other "special qualifications" a service deems necessary to be used for

---

[4] The fact that the Court is unable to award Plaintiffs' the relief they seek in their challenge to the Commissioning Policy further suggests that their claim is not redressable.  *See Spokeo*, 136 S.Ct. at 1547 (observing that courts have jurisdiction only over claims that are "likely to be redressed by a favorable judicial decision").  For the reasons discussed above, the Court lacks the authority to grant Plaintiffs the relief they seek, namely an injunction preventing Defendants from denying the "appointment" of Plaintiff Harrison to be a commissioned officer, *see* Compl., Prayer for Relief ¶ 2, and an order requiring the Army to commission Harrison, *see id.*, Prayer for Relief ¶ 3.

commissioning officers.  *Id.* § 532(a)(3)-(5).  These types of determinations "are in an area involving judgments as to military character, a field foreign to [federal courts'] normal competence."  *See Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975) (declining to consider plaintiff's discharge from the Army for his failure to meet the standards required for promotion in rank and request for reinstatement).

With respect to the anticipated degree of interference with military function, the Supreme Court has already made clear in *Orloff* judicial interference in the commissioning process is not permitted.  In that case, the plaintiff had been drafted under a special statute authorizing the commission of medical specialists beyond the normal age limit.  *See* 345 U.S. at 93–94.  He was denied a commission—which otherwise would have been granted him—because of his refusal to execute a loyalty certificate and his lawful exercise of his Fifth Amendment right not to answer certain questions, and, as a result, the Army reassigned him to another specialty.  *Id.*  On appeal, the Supreme Court refused to order that he be commissioned or discharged.  In so holding, the Court reasoned that "[i]t is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief.  Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions."  *Id.* at 90.  Deferring the military to make commissioning decisions, the Court concluded that "the judiciary [must] be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous to not intervene in judicial matters."  *Id.* at 94.  So too here should the Court refrain from second-guessing Defendants' commissioning decisions.

23

**C.      Even if justiciable, Plaintiffs' challenge to the Commissioning Policy must be dismissed because the policy passes muster under rational basis review**

Assuming the justiciability of Plaintiffs' claim, it should nevertheless still be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  "A motion to dismiss under [Federal] Rule [of Civil Procedure] 12(b)(6) tests the sufficiency of a complaint[.]"  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  To survive such a motion, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering such a motion, a plaintiff's well-pleaded allegations are taken as true; however, legal conclusions—including those that are couched as factual allegations—enjoy no such deference.  *Twombly*, 550 U.S. at 555.  "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider factual allegations in the complaint, documents attached to the complaint, and matters of public record of which the Court may take judicial notice.  *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

In this case, Plaintiffs have asserted a challenge to Defendants' policy of applying the accessions standards to those Service members seeking to commission as officers, which has the effect of precluding HIV-positive members from becoming commissioned officers.  *See* Compl. ¶ 74 ("Defendants have refused to grant Plaintiff Nick Harrison a commission as an officer serving as an attorney in the Judge Advocate General Corps for the D.C. National Guard based solely on his HIV status.").  Although Plaintiffs go to great lengths in both their Complaint and preliminary injunction motion to argue that Defendants' HIV policies should be subject to strict scrutiny, *see,*

24

*e.g.* Compl. ¶ 76; Pls.' Mot. at 9-22, the Fourth Circuit has already clearly established that rational

basis review applies, *see Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995)

(holding that the "alleged unequal treatment of HIV-positive [individuals]" is subject to rational

basis review).  The Fourth Circuit's holding in this regard comports with decisions from other

jurisdictions, which have explained that people with HIV do not constitute "a suspect class that is

entitled to special consideration under the Equal Protection Clause."  *Mofield v. Bell*, 3 F. App'x

441, 443 (6th Cir. 2001); *see also Doe v. Marsh*, No. 89-1383-OG, 1990 U.S. Dist. LEXIS 1442,

at *17 (D.D.C. Feb. 8, 1990) (concluding that HIV status does not confer membership in a suspect

class because it is no more than a "medically documented distinction based on the status of an

individual as a carrier of an infectious, transmittable virus that leads to an incurable disease");

*Werts v. Greenwood Cty. Det. Ctr.*, No. CIV.A.4:08-1852-TLW-TER, 2008 WL 5378251, at *4

(D.S.C. Dec. 23, 2008) (applying rational basis review); *Perkins v. Kansas Dep't of Corr.*, No.

CIV.A.97-3460-GTV, 2004 WL 825299, at *9 (D. Kan. Mar. 29, 2004) (applying same and further

noting that "[o]ther district courts" have held similarly).[5]  Tellingly, Plaintiffs have not identified

---

[5] Even if the standard review for equal protection challenges based on HIV status were not settled law in the Fourth Circuit, Plaintiffs' request for heightened review should still be denied. One of Plaintiffs' primary disagreements with the Fourth Circuit's holding in *Doe* is that Court's suggestion that discrimination based on HIV status is subject to rational basis review because it involves a classification based on disability.  *See* Pls.' Mot. at 20-22 (arguing that HIV status is distinct from the disabilities discussed in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985)).  Yet even if Plaintiffs could successfully untether HIV status from the concept of disability, they would still be left with the fact that HIV is an infectious disease.  And courts have routinely held that line-drawing based on disease and other medical conditions are subject to rational basis review.  *See, e.g.*, *Wilson v. Lynch*, 835 F.3d 1083, 1098 (9th Cir. 2016) (applying rational basis review to "similar medical conditions"); *United States v. Santiago-Martinez*, 58 F.3d 422, 423 (9th Cir. 1995) (same for obesity); *Adell v. Hepp*, No. 17-CV-448-JPS, 2017 WL 1393728, at *3 (E.D. Wis. Apr. 18, 2017) (same for bowel diseases); *Brandon v. Carmichael*, No. 15CV2814 WQH (PCL), 2016 WL 8731115, at *4 (S.D. Cal. Oct. 28, 2016), report and recommendation adopted, No. 15-CV-2814-WQH-PCL, 2016 WL 7030365 (S.D. Cal. Dec. 2, 2016)(same for hepatitis); *Mlaska v. Schicker*, No. 15-CV-00918-MJR, 2015 WL 6098733, at *11 (S.D. Ill. Oct. 16, 2015); (same for "medical conditions" generally).  Whether because HIV

a single case holding that strict scrutiny applies where a challenge policy purportedly discriminates on the basis of HIV status.

Under rational basis review, a classification need only be "rationally related" to a "legitimate governmental interest." *Verderamo v. Mayor and City Council of Balt.*, 4 F. Supp. 3d 722, 733-34 (D. Md. 2014) (citation omitted). "In other words, the fit between the enactment and the public purposes behind it need not be mathematically precise. As long as Congress has a reasonable basis for adopting the classification, which can include rational speculation unsupported by evidence or empirical data, the statute will pass constitutional muster." *Wilkins v. Gaddy*, 734 F.3d 344, 348 (4th Cir. 2013) (citation omitted). This deferential standard of review "thus embodies an idea critical to the continuing vitality of our democracy: that courts are not empowered to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations." *Id*. (citation omitted).

Notably, a challenged law or policy "must be upheld under rational basis review if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added); *see also Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (observing that a classification will be deemed valid so long as the "legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." (internal citation omitted)). Indeed, "the deference afforded to the government under the rational basis test is so deferential that even if the government's actual purpose in creating classifications is not rational,

---

constitutes a "disability" (as the court in *Doe* held) or because it is a disease, equal protection challenges to policies concerning HIV-positive individuals must be reviewed under the rational basis standard.

26

a court can uphold the regulation if the court can *envision* some rational basis for the classification." *Scruggs*, 942 F.2d at 279; *see also Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) ("[T]he State has no obligation to produce evidence to support the rationality of [a classification], which may be based on rational speculation unsupported by any evidence or empirical data." (citation and internal quotation marks omitted)).

Here, Defendants' Commissioning Policy passes muster under this deferential standard. It cannot be disputed that the military has an interest in ensuring that all Service members are medically fit and ready to serve. Indeed, DoD has a statutory obligation to screen applicants for the military in order to ensure that it enlists only those individuals who are "qualified, effective, and able-bodied" between the ages of 17 and 42. *See* 10 U.S.C. § 505(a). It is thus Defendants' role to assess the fitness of every potential Service member to ensure that all military units, particularly those that may be deployed to combat zones, are able to carry out their duties and mission to the fullest extent. *See, e.g.*, DoDI 1332.45 § 1.2a ("To maximize the lethality and readiness of the joint force, all Service members are expected to be deployable."); DoDI 6490.07 § 1 (establishing policy to ensure that all members are "medically able to accomplish their duties in deployed environments").

HIV infection has the potential to undermine a Service member's medical fitness, and DoD has accordingly reasonably decided to preclude individuals who are HIV-positive from enlisting in the military. As Plaintiffs concede, in the best case scenario, individuals who are HIV positive must take daily action to ensure that their viral loads stay suppressed in order to remain healthy and minimize the risk that they will infect others. *See* Compl. ¶¶ 22-24 (describing HIV as "a chronic, manageable condition"). This need for regular treatment and monitoring could impair the ability of an HIV-positive Service member to serve worldwide. As a May 2018 report from the

27

Centers for Disease Control and Prevention ("CDC") noted, "[c]linical, pharmacy, and laboratory services are limited in some deployment settings" and "access to expedited laboratory testing for HIV infection" as well as the three-site [sexually transmitted infections] testing recommended by the CDC "is either unavailable or not easily accessible at many smaller medical facilities in the United States." *See* Jason M. Blaylock, *et al.*, "HIV Preexposure Prophylaxis in the U.S. Military Services – 2014-2016," Centers for Disease Control and Prevention, Morbidity and Mortality Weekly Report (May 25, 2018).[6]  Additionally, "because some pharmacies have insufficient stock of medication for use for [HIV treatment,] not every service member" who needs the medication can obtain it, and the recommended follow-up evaluations every three months "can be difficult in light of the often unpredictable training and mission schedules." *Id.*  These considerations, among others,[7] make necessary Defendants' policy of precluding HIV-positive individuals from enlisting in order to advance the military's important goal of ensuring that all Service members are ready and able to serve to the fullest extent possible.

Defendants' policy of applying this same accessions standard to Service members who are already enlisted and who seek to become commissioned officers—the Commissioning Policy at issue in Plaintiffs' Complaint—likewise satisfies rational basis review.  Becoming a commissioned officer involves a change in a Service member's status and duties, and there are specific

---

[6] On a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of CDC studies (upon which Plaintiffs also rely in their Complaint, *see* Compl. ¶¶ 24-25) because they are "items in the public record."  *See Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986).

[7] Service members in combat zones also have the potential to be exposed to significant amounts of blood, whether through emergency medical assistance on the battlefield or via blood transfusions.  Notably, blood transfusions by far present the greatest risk for transmitting HIV.  *See* "Updated Guidelines for Antiretroviral Postexposure Prophylaxis After Sexual, Injection Drug Use, or Other Nonoccupational Exposure to HIV—United States, 2016," Centers for Disease Control and Prevention (2016).

qualifications and privileges attendant to that new role.    For instance, Congress has proscribed different qualifications for commissioned officers than those for regular enlistments, *compare* 10 U.S.C. § 532(a) (qualifications for commissioned officers, including to be "of good moral character," "physically qualified for active service," and "has such other special qualifications" determined by DoD) *with* 10 U.S.C. § 505(a) (qualifications for enlistment in the military), and also created different oaths, *compare* 5 U.S.C. § 3331 (text of the oath of office for those "appointed to an office of honor . . . in the civil service or uniformed services") *with* 10 U.S.C. § 502(a) (text of the enlistment oath).[8]   Moreover, commissioned officers are granted certain authorities and powers that exceed what are given to enlisted Service members; under the Uniform Code of Military Justice, for instance, only commissioned officers can be commanding officers, *see* 10 U.S.C. § 801(3), and commissioned officers are given the power to convene general courts-martial, *see* 10 U.S.C. § 822(a).

Because commissioning to an officer position involves satisfying a new set of criteria and being given new leadership responsibilities and privileges, Defendants reasonably decided that the HIV accession standards should apply to the commissioning process.   *See* DoDI 6485.01 § 3(a). Much like a civilian seeking to enlist in the military for the first time, individuals seeking to commission as officers are looking to advance to a new, higher-level position, with a significant new set of duties and leadership responsibilities.   And just as Defendants evaluate a civilian at the enlistment stage to assess whether that individual is able to fulfill the desired role in a manner that advances the needs and strategies of the military, the evaluation of an individual at the officer-commissioning stage reasonably involves a similar assessment at that time.

---

[8] In fact, a commissioned officer is one of the statutorily proscribed classes of officials who are permitted to administer the enlistment oath.  *See* 10 U.S.C. § 502(b).

The fact that some Service members who, like Plaintiff Harrison, may be denied the ability to commission despite having several years of service does not undermine the reasoned basis for Defendants' policy.  Although DoD has invested time and resources in training and developing the skills of such individuals to serve in the military, such training and skills are not necessarily related to the training and skills necessary to serve in a commissioned officer position.  Moreover, commissioned officers are expected to serve and deploy in any capacity and, thus, it is reasonable for DoD to again take into account their medical condition before an individual is assigned to serve as a commissioned officer.

In sum, Defendants' policy of not permitting HIV-positive individuals to enlist is rationally related to its mission of ensuring that military units are as capable and deployable as possible, and Defendants' reasonably apply the same standards to those members seeking to become commissioned officers.  Plaintiffs' challenge to the Commissioning Policy thus fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction and grant Defendants' Motion to Dismiss.


DATE: August 16, 2018

Respectfully submitted,

G. ZACHARY TERWILLIGER                     CHAD A. READLER
United States Attorney                              Acting Assistant Attorney General,
                                                            Civil Division

_____/s/_____
R. TRENT MCCOTTER                            ANTHONY J. COPPOLINO
Assistant United States Attorney                Deputy Director
2100 Jamieson Avenue                             Federal Programs Branch

Alexandria, Virginia 22314
Tel: (703) 299-3845
Fax: (703) 299-3983
trent.mccotter@usdoj.gov

NATHAN M. SWINTON
Senior Trial Counsel
U.S. Department of Justice, Civil
    Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone:  (202) 305-7667
Facsimile:  (202) 616-8460
Nathan.M.Swinton@usdoj.gov

*Counsel for Defendants*

31

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I filed the foregoing using the Court's CM/ECF

system, which will send a notification of electronic filing (NEF) to the following counsel of

record:

ANDREW R. SOMMER
Va. Bar Number 70304
WINSTON & STRAWN LLP
1700 K St., NW
Washington, DC 20006
T: (202) 282-5000
ASommer@winston.com

*Counsel for Plaintiffs*


                    /s/
R. TRENT MCCOTTER
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3845
Fax:    (703) 299-3983
Email: trent.mccotter@usdoj.gov

*Counsel for Defendants*