IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NICHOLAS HARRISON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:18-cv-641 (LMB/IDD) |
| ) | |
| PATRICK M. SHANAHAN, in his official ) | |
| capacity as Acting Secretary of Defense, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Nicholas Harrison ("Harrison") and OutServe-SLDN, Inc. ("OutServe")[1] (together, "plaintiffs") bring this civil action against the U.S. Department of Defense ("DoD"), the Secretary of Defense, and the Secretary of the Army (collectively, "defendants"), challenging the constitutionality of the DoD and Army policies governing servicemembers living with the human immunodeficiency virus ("HIV").[2] Before the Court is a dispute related to 330 documents for which defendants[3] have asserted the "deliberative process" privilege.[4] After several hearings, extensive briefing, and an in camera review of a random selection of 33 of the disputed documents, the magistrate judge found that the documents either were not subject to the deliberative process

---

[1] Defendants have filed a motion to dismiss OutServe from this action, arguing that OutServe is not a genuine membership organization that can assert associational standing on behalf of its members. That motion has not yet been argued and is not directly relevant to this discovery dispute.

[2] In a related action, OutServe and two pseudonymous airmen living with HIV advance a similar challenge to the Air Force's HIV-related policies. See Roe v. Shanahan, No. 1:18-cv-1565.

[3] Formally, the Rule 72 objection at issue here was filed not only by the named defendants in this action but also by the Departments of the Air Force and Navy, which have been required to produce relevant and discoverable documents and information. For simplicity, the term "defendants" herein refers to all entities that objected to the magistrate judge's ruling.

[4] A similar issue in Roe has been held in abeyance pending the resolution of this objection.

privilege or should be produced to plaintiffs under the balancing framework set out in Cipollone v. Liggett Group, Inc., Nos. 86-1198, 86-1223, 1987 WL 36515 (4th Cir. Feb. 13, 1987). The magistrate judge accordingly granted plaintiffs' motion to compel production of all 330 of the disputed documents. Defendants timely objected to the magistrate judge's ruling under Rule 72(a) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' objection will be sustained in part and overruled in part, the magistrate judge's order will be affirmed in part and reversed in part, and plaintiffs' motion to compel will be granted in part and denied in part.

I.

A.[5]

Harrison enlisted in the U.S. Army in 2000. Compl. for Declaratory & Inj. Relief [Dkt. No. 1] ("Compl.") ¶ 40. Three years later, he was discharged from active duty and became a member of the Army Reserves, joining the Oklahoma National Guard and pursuing first an undergraduate degree and then a law degree. Id. ¶¶ 41-42. Although his legal studies were interrupted by a 16-month deployment to Afghanistan beginning in early 2006, id. ¶ 43, he ultimately received a J.D., as well as an M.B.A., from the University of Oklahoma in 2011, id. ¶ 45. In 2011, he was also deployed for a second tour of duty, this time to Kuwait. Id. ¶ 46. In 2012, after returning from that tour, Harrison was diagnosed with HIV. Id. ¶ 47. He immediately began antiretroviral therapy, and soon his "viral load"—the number of copies of the HIV virus per milliliter of his blood—was "undetectable" or "suppressed," a status he has maintained ever since. Id. ¶ 48.

Harrison was first offered a position as a Judge Advocate General ("JAG") officer when he passed the Oklahoma bar exam. Compl. ¶ 49. Although he turned that offer down to take

---

[5] The following facts are drawn from plaintiffs' complaint and are recited as context for the present discovery dispute.

2

part in the Presidential Management Fellow program in Washington, D.C., he soon applied for a similar JAG position with the D.C. National Guard. Id. ¶¶ 50-51. Harrison was told that he would be commissioned as a JAG officer, with the rank of captain, so long as he satisfied the Army's accessions standards, which are applied to commissioning as well as enlisting servicemembers, see id. ¶ 52; however, Harrison had a problem. The Army's accessions policy flatly prohibits any HIV-positive individual from enlisting, or by extension from being commissioned as an officer, in the active or reserve components of the Army. See id. ¶¶ 32, 35. Although Harrison received the highest possible score in every component of his medical exam, he was nonetheless classified as nondeployable based solely on his HIV-positive status and was denied commissioning. Id. ¶ 53. He attempted to secure a medical waiver and an exception to policy ("ETP") granting him relief from that across-the-board prohibition but was unsuccessful. Id. ¶¶ 54-63. Equally unsuccessful was his petition to the Army Board for Correction of Military Records, which was rejected nearly two years after it had been filed. See id. ¶ 64 (detailing his petition); Roe v. Shanahan, 359 F. Supp. 3d 382, 404 (E.D. Va. 2019) (describing the results of Harrison's petition), appeal docketed, No. 19-1410 (4th Cir. Apr. 18, 2019).

Harrison and OutServe, an organization representing the interests of veterans and active-duty servicemembers who are LGBTQ+ or HIV positive, filed this suit in May 2018, arguing that the DoD and Army policies governing the accession, and thus the enlistment or commissioning, of individuals living with HIV—particularly DoD Instruction ("DoDI") 6485.01[6] and Army

---

[6] DoDI 6485.01 provides that HIV-positive individuals are ineligible for enlistment; establishes testing and screening procedures to examine potential and current servicemembers for evidence of HIV; and establishes that active-duty servicemembers who contract HIV "will be referred for appropriate treatment and a medical evaluation of fitness for continued service in the same manner as a Service member with other chronic or progressive illnesses" and, if "determined to

3

Regulation ("AR") 600-110[7]—violate the equal protection component of the Fifth Amendment's Due Process Clause, both on their face and as applied to Harrison.[8] Plaintiffs seek declaratory and injunctive relief, litigation costs and expenses, and their attorneys' fees.

B.

In late January 2019, plaintiffs moved to compel defendants to produce approximately 1,500 documents that defendants were withholding based on the deliberative process privilege.[9] The contested categories of discovery included "documents and information considered or relied upon in the drafting or updating of [the Armed Forces'] regulations pertaining to HIV" and those "considered or relied upon in drafting two DoD reports to Congress regarding DoD's HIV policies." Dkt. No. 108, at 2. Plaintiffs advanced two principal arguments in their motion to compel: first, that the deliberative process privilege did not apply at all because "the government's intent is at issue"; and, second, that even if the privilege did apply, it should yield because the "need for the withheld discovery outweighs any potential interests served by the privilege." Id. at 1-2. For their part, defendants objected that plaintiffs were seeking an inappropriate "across-the-board ruling" and "ha[d] not identified specific documents . . . in any meaningful way." Dkt. No.

---

be fit for duty[,] will be allowed to serve in a manner that ensures access to appropriate medical care."

[7] AR 600-110 reiterates DoDI 6485.01's categorical prohibition on the appointment or enlistment of HIV-positive individuals; establishes the Army's programs for prevention and detection of HIV as well as counseling and treatment for servicemembers who contract the disease; and provides for involuntary separation of HIV-positive servicemembers, or at least those "who demonstrate progressive clinical illness or immunological deficiency."

[8] For an overview of the claims and legal arguments advanced in the related case challenging the Air Force's policies on HIV-positive servicemembers, see Roe, 359 F. Supp. at 410-18.

[9] Although defendants' initial privilege assertion covered over 1,800 withheld or redacted documents, the parties met and conferred before plaintiffs filed their motion to compel, and defendants agreed to withdraw the privilege assertion for approximately 200 documents. See Dkt. No. 108, at 1 & n.1.

111, at 2-3. Defendants also insisted that their invocation of the privilege was proper under the balancing analysis set forth in governing Fourth Circuit precedent. See id. at 7-9, 11-21. Specifically, they argued that the withheld information was categorically irrelevant to plaintiffs' claims; that relevant evidence was available from other sources; and that an order requiring defendants to disclose the withheld documents would subvert the purposes of the deliberative process privilege and hinder the frank discussions necessary for effective policymaking.

The magistrate judge held several hearings on plaintiffs' motion to compel. At the first hearing, he declined to address defendants' argument about the government's intent, stating that the issue of which level of scrutiny should apply was better left "for trial." Tr. of Mot. Hr'g [Dkt. No. 115] ("Feb. 1, 2019 Tr.") 7. The magistrate judge observed that the parties had not engaged in a good-faith effort to examine each document individually and held the motion in abeyance to enable the parties to meet and confer again. Id. at 16-17. The parties met and resolved more issues but were unable to reach an agreement on most of the contested documents. Nonetheless, the parties proposed a solution: They would submit for in camera review "a representative sample of several documents from each of 15 separate categories" that had been identified by defendants. Joint Status Report [Dkt. No. 116] 2-3.[10] The magistrate judge

---

[10] The categories defendants identified were documents and materials (i) related to policy discussions about DoDI 6485.01; (ii) addressing DoDI 6130.03; (iii) related to the policy development work of the Accession Medical Standards Working Group; (iv) addressing the operations of the U.S. Military Entrance Processing Command; (v) related to the DoD's retention policy for servicemembers classified as nondeployable; (vi) providing information about the military's nondeployable servicemembers; (vii) concerning strategies for dealing with media inquiries; (viii) related to the Army's ongoing review of AR 600-110; (ix) related to the Army's previous policy reviews; (x) related to the DoD's 2014 and 2018 reports to Congress; (xi) related to policy discussions about preexposure prophylaxis treatment; (xii) addressing DoDI 6490.07; (xiii) discussing Air Force-specific policies; (xiv) discussing Navy-specific policies; and (xv) that do not fit within any of the preceding categories. On February 4, 2019, plaintiffs withdrew their challenge to the documents included in the seventh category.

accepted the parties' proposal and ordered that the parties produce the sample by February 12, 2019. Defendants prepared the sample, which comprised 32 documents and one DVD containing an audio recording of a working group session, and delivered it to the magistrate judge's chambers on that date.

The magistrate judge held a second hearing on the motion to compel in which he raised several issues with the parties based on his in camera review, including whether some of the documents contained factual or nondeliberative material not subject to the privilege and whether the privilege had been waived with respect to draft documents for which final versions were publicly available. The magistrate judge also observed that defendants' privilege log did not provide specific, individualized explanations as to why the privilege had been asserted for each document, relying instead on "coined phrase[s]" or "buzzwords." Tr. of Mot. Hr'g [Dkt. No. 125] ("Feb. 22, 2019 Tr.") 30, 33-35. The magistrate judge gave the parties a final opportunity to meet and confer to reduce the scope of their disagreement. Id. at 49-50. The parties subsequently advised the magistrate judge that although they had reached agreement as to all but 330 of the documents, they were unable to reduce the dispute further, and they asked the magistrate judge "to swiftly issue an order." Joint Status Report [Dkt. No. 126] 1-2.

The magistrate judge granted plaintiffs' motion to compel as to the remaining 330 disputed documents on March 14, 2019. The order articulated multiple grounds for the ruling, including that defendants had not demonstrated that all of the withheld documents were deliberative in nature, Order [Dkt. No. 128] 1-2; that under the four-part balancing test articulated in Cipollone v. Liggett Group, Inc., Nos. 86-1198, 86-1223, 1987 WL 36515 (4th Cir. Feb. 13, 1987), defendants' assertion of the privilege should yield in favor of plaintiffs' interest in the relevant and otherwise discoverable information, id. at 2-3; and that the privilege had been

6

waived with respect to withheld draft documents that were "substantially identical" to the final, publicly available versions of those documents, id. at 3. Defendants timely objected to the magistrate judge's ruling under Rule 72(a) of the Federal Rules of Civil Procedure.

II.

Upon a timely objection to a magistrate judge's nondispositive ruling, the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A). The deferential clear-error standard provides that factual portions of the magistrate judge's ruling may be set aside where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Bruce v. Hartford, 21 F. Supp. 3d 590, 593-94 (E.D. Va. 2014) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law, on the other hand, are reviewed under the contrary-to-law standard, which is essentially synonymous with de novo review. See id. at 594. But see In re Outsidewall Tire Litig., 267 F.R.D. 466, 470 (E.D. Va. 2010) (observing that "decisions of a magistrate judge concerning discovery disputes and scheduling should be afforded great deference" (internal quotation marks and citation omitted)). The Court is "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by" the magistrate judge. Cf. Scott v. United States, 328 F.3d 132, 137 (4th Cir. 2003).

A.

The law affords a qualified privilege to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (internal quotation marks and citation omitted). This "deliberative process" privilege

rests on the notion that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (internal citation omitted) (quoting Sears, Roebuck, 421 U.S. at 151); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) ("The privilege . . . serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.").

The deliberative process privilege is limited in two relevant ways. First, as a threshold matter, it applies only to those portions of documents that are predecisional and deliberative in nature. For instance, it does not shield statements about a policy after the policy has been finalized, and it "does not protect purely factual information, unless it is inextricably intertwined with deliberative material." Stone v. Trump, 356 F. Supp. 3d 505, 514 (D. Md. 2018) (citing City of Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993)). Second, "[w]hen a party . . . seeks agency materials, the validity of the privilege 'depends . . . upon a balancing of the public interest in nondisclosure with the need for the information as evidence.'" Cipollone v. Liggett Grp. Inc., Nos. 86-1198, 86-1223, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987) (per curiam) (third alteration in original) (citation omitted). "In striking this balance, the common law of discovery [has] developed a number of factors for the court to

8

consider, including: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) 'the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" Id. (quoting FTC v. Warner Commc'ns, 742 F.2d 1156, 1161 (9th Cir. 1984)).

B.

In assessing plaintiffs' motion to compel, the Court must answer two distinct questions. The first is whether the deliberative process privilege applies to the documents in dispute, as exemplified by the sample the parties submitted to the magistrate judge. If the privilege applies, the Court must then assess those documents to which the privilege applies to determine whether it is overcome. For the reasons detailed below, the Court concludes that the deliberative process privilege applies to some, but not all, of the disputed documents and that plaintiffs are entitled to the production of some, but not all, of the documents to which that privilege applies. Accordingly, the magistrate judge's order will be affirmed in part and denied in part.

1.

The 33 documents submitted for in camera review reveal several issues with defendants' assertion of the deliberative process privilege. The first involves defendants' privilege log. See Dkt. No. 126-1.[11] Defendants bear the initial burden of demonstrating that the privilege applies to the documents being withheld. See NLRB v. Interbake Foods, LLC, 637 F.3d 492, 501 (4th Cir. 2011) ("A party asserting privilege has the burden of demonstrating its applicability."). To satisfy that burden, defendants must articulate "specific facts" demonstrating that the privilege

---

[11] The privilege log was not submitted as part of defendants' Rule 72 objection but rather was attached as an exhibit to the parties' February 27, 2019 joint status report to the magistrate judge.

9

applies, RLI Ins. Co. v. Conseco, Inc., 477 F. Supp. 2d 741, 751 (E.D. Va. 2007), and "[a] conclusory assertion of privilege is insufficient to establish a privilege's applicability to a particular document," Bethune-Hill v. Va. State Bd. of Elections, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015) (quoting Page v. Va. State Bd. of Elections, 15 F. Supp. 3d 657, 661 (E.D. Va. 2014)). As the magistrate judge observed, many of defendants' privilege log descriptions provide only conclusory assertions. See, e.g., Dkt. No. 126-1, at 4 ("Deliberative study titled: HIV Policy Summary"); id. at 7 (same). Indeed, although the word "deliberative" is inserted at the beginning of almost every entry, many entries seem to describe documents that are factual or otherwise nondeliberative in nature. See, e.g., id. at 5 (asserting the privilege with respect to two documents described as "[d]eliberative spreadsheets tracking numbers and categories of non-deployable service members"); id. at 6 ("Deliberative information paper summarizing the DoD HIV policy"). Many of the privilege log entries use the same description for several documents, and most are missing key information about the date, subject matter, or nature of the assertedly deliberative information contained therein. These conclusory descriptions do not supply the "specific facts" needed to justify defendants' invocation of the privilege and deprive plaintiffs and the Court of the ability to engage meaningfully with defendants' claims.[12]

The second issue is that defendants' invocation of the privilege is overbroad. Many of the documents included in the sample contain compilations of statistics or facts, summaries of current policies without commentary or suggested amendments, lists of meeting attendees, and other

---

[12] Further, in the version of the privilege log submitted to the magistrate judge and included in the public record, many of the descriptions are cut off or incomplete. See Dkt. No. 126-1, at 1, 6-7, 10, 19, 24-25. Although it may be presumed that these issues arose when defendants' live spreadsheet was converted into a static PDF file, it is unknown whether plaintiffs received the live or static document.

10

matters that are unquestionably factual rather than deliberative in nature. One document, for example, is a one-page presentation slide summarizing the Army's current policies on the involuntary separation of HIV-positive servicemembers. InCamera_374. Defendants' conclusory assertion to the contrary, see Dkt. No. 126-1, at 41 ("Deliberative slide regarding Army HIV Separation Management Policy"), there is nothing remotely deliberative about this matter-of-fact compilation of current policies. Other documents contain relevant statistics about servicemembers with HIV and other chronic conditions. Even assuming those statistics appear in what are otherwise deliberative documents, they are not so inextricably intertwined with deliberation or debate as to justify defendants' categorical decision to withhold them. In general, the 33-document sample demonstrates that defendants have asserted the privilege with respect to at least some documents and portions thereof in an undifferentiated and untailored manner.[13] Defendants' failure to tailor their assertion of the privilege is all the more striking given the magistrate judge's multiple admonitions and the opportunities they had to narrow the scope of the dispute.

To be sure, some of the documents included in the representative sample are predecisional and deliberative in nature and are thus covered by the deliberative process privilege. Some are working drafts of DoDI policies and documents, which necessarily reflect the drafters' ongoing decisionmaking processes related to the structure and contents of the documents and therefore are covered by the privilege.[14] Some contain descriptions of proposed

---

[13] Additionally, several of the documents address not only HIV but also other medical conditions or unrelated issues. Even if the non-HIV-related portions of the withheld documents are assumed to be predecisional and deliberative, defendants still should have separately described those portions on the privilege log to allow plaintiffs and the magistrate judge to perform the Cipollone balancing analysis with complete information.

[14] The magistrate judge's order suggests that the only potentially privileged elements of a working draft are "redline comments" in the text or the margins. Order [Dkt. No. 128] 1-2. That suggestion is incorrect. Whether a document is "deliberative" depends on whether "disclosure of

11

changes to the DoD's medical standards or other policies, along with comments on the status of those proposed changes. Still others attempt to propose or develop research in support of ongoing revisions to policies. Based on a thorough in camera review of the documents that were reviewed by the magistrate judge, the Court concludes that although some of the documents included in the sample—and thus presumably in the larger set of contested documents[15]—are not

---

the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1278 (11th Cir. 2004); see also Abtew v. U.S. DHS, 808 F.3d 895, 898-99 (D.C. Cir. 2015) ("[A] document is deliberative if it is a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." (internal quotation marks and citation omitted)). The contents of draft documents necessarily reveal the drafters' ongoing debates about what to include and in what way. Importantly, this is true regardless of whether that decisional process is evinced through redline comments or simply by the contents of the draft itself. See also City of Virginia Beach, 995 F.2d at 1253 (identifying "draft documents" as subject to the deliberative process exemption of the Freedom of Information Act).

The magistrate judge also found that the privilege had been waived with respect to draft documents whose final versions have been made public. This finding is incorrect. There are no subject-matter or categorical waivers in the deliberative process privilege context. Instead, the public "release of a document waives the privilege only for the document specifically released, not for related materials." Murray Energy Corp. v. McCarthy, No. 5:14-cv-39, 2016 WL 6902359, at *5 (N.D. W. Va. July 20, 2016) (citing In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997)).

[15] Neither party objected to the sampling procedure, and neither has provided any cogent reason why the sample cannot be deemed to be fairly representative of the larger universe of documents. Instead, defendants simply insist that the magistrate judge or this Court perform an individualized assessment of each of the 330 documents in dispute. Given their argument that "the number of documents is not a principled . . . distinction," Defs.' Reply [Dkt. No. 146] 5 n.2, defendants presumably would have said the same had the parties not been able to agree on any of the original 1,500 documents—or if the number of disputed documents had exceeded 10,000. Federal district courts are necessarily vested with discretion to manage their dockets and discovery disputes in light of constraints on time and resources. In doing so, they may rely on the parties to identify a reasonable subset of documents for careful scrutiny and may extrapolate from that subset. Any other rule would risk substantial delays to the administration of justice.

subject to the deliberative process privilege, others are covered by the qualified privilege and accordingly must be assessed under the Cipollone balancing test.[16]

2.

The first component of the Cipollone balancing test asks whether and to what extent the withheld documents are relevant to the litigation. Defendants contend that the magistrate judge erred because the contested documents cannot be relevant to plaintiffs' claims. They argue, for instance, that lawsuits challenging military policies are subject to a "highly deferential standard of review" in which governmental decisionmakers' subjective intent is necessarily irrelevant. Defs.' Mem. [Dkt. No. 138] 6 (citing Guerra v. Scruggs, 942 F.2d 270, 279 (4th Cir. 1991)). They add that Fourth Circuit precedent and this Court's opinion in a related case require that plaintiffs' claims be subject only to rational basis review. Id. at 6 & n.1, 7 (citing Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1267 (4th Cir. 1995), and Roe v. Shanahan, 359 F. Supp.

---

[16] Before the magistrate judge, plaintiffs argued that the deliberative process privilege is categorically inapplicable here "because the government's intent is at the heart of the issue in this case." Mot. to Compel [Dkt. No. 108] 5 (quoting Stone, 356 F. Supp. 3d at 515). In support, plaintiffs point to case law from beyond this circuit as well as district court decisions addressing other areas of the law. See id. at 5-6 (citing, inter alia, In re Subpoena Duces Tecum, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("[T]he government's deliberative process privilege does not apply when a cause of action is directed at the government's intent."); Bethune-Hill, 114 F. Supp. 3d at 339 (holding, in a racial gerrymandering challenge to state legislative districts, that the government's "decisionmaking process 'is the case'" (citation omitted)); Jones v. City of College Park, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (holding, in an action brought by a former municipal employee against the defendant city under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, that the deliberative process privilege was "simply inapplicable, because government intent is at the heart of the issue in th[e] case")).

Plaintiffs' argument is unpersuasive. It may be that there are some claims that are so inextricably connected to governmental decisionmakers' subjective intent that the deliberative process is categorically inapplicable. But see Bethune-Hill, 114 F. Supp. 3d at 340 (ruling that evidence as to the potentially racially discriminatory intent of state legislators was "clearly relevant" but simply "weigh[ed] in favor of disclosure"). But without a clearer expression of that principle in any binding precedent from this circuit, the Court will not relieve plaintiffs of their burden of showing that the privilege should yield.

13

3d 382, 410 n.31 (E.D. Va. 2019), appeal docketed, No. 19-1410 (4th Cir. Apr. 18, 2019)).

Defendants' argument is not convincing at this stage of the litigation.[17] Even under rational basis review, a policy cannot stand to the extent it is based only on irrational motivations such as animus, fear, or prejudice. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 450 (1985); U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533-34 (1973). Plaintiffs' pleadings can certainly be read to encompass a claim that the military's policies concerning servicemembers living with HIV are utterly irrational and thus can be explained only by reference to misinformation, fear, or prejudice. Nor, as plaintiffs correctly point out, has this Court definitively foreclosed the possibility that a heightened form of scrutiny could be appropriate in this case.[18] For these reasons, the magistrate judge did not err in concluding that the documents sought by plaintiffs could undercut both stated and conceivable justifications for the military policies at issue in this lawsuit and are thus clearly relevant to plaintiffs' claims.

The second component of the Cipollone test asks whether there are viable alternative sources of evidence on the same matters. The magistrate judge answered that question in the negative, concluding that "[d]efendants are the only source of the information." Order [Dkt.

---

[17] As the magistrate judge emphasized, see, e.g., Feb. 1, 2019 Tr. 15, the question whether a given document should be produced in discovery is quite different from the question whether that document would be admissible at trial, both as a matter of the rules of evidence and as legal issues are resolved through motions in limine or on summary judgment.

[18] Although the Court denied plaintiffs' motion for preliminary injunctive relief in September 2018, Order [Dkt. No. 60], it was not necessary to rule on the levels-of-scrutiny issue at that time. Moreover, in Roe, this Court expressly stated that the scrutiny issue would be "left for another day" because the plaintiffs had demonstrated a likelihood of success on the merits even assuming that only rational basis review applied. 359 F. Supp. 3d at 410 n.31. The Court's approach was the usual one with respect to novel or difficult questions of law vis-à-vis constitutional scrutiny. See, e.g., United States v. Windsor, 570 U.S. 744, 769-70 (2013) (declining to address the respondent's argument in favor of heightened scrutiny after concluding that the Defense of Marriage Act could not withstand even rational basis review).

No. 128] 2. Defendants do not directly challenge the magistrate judge's conclusion; rather, they reiterate their position that the evidence sought is categorically irrelevant to plaintiffs' claims and simply argue that "the fact that the information is in defendants' sole possession does not cause this factor to weigh in favor of overcoming defendants' entitlement to the privilege." Defs.' Mem. [Dkt. No. 138] 11. As the Court has already found that the evidence sought is relevant, defendants' argument fails. Nor do defendants dispute the magistrate judge's findings as to the third Cipollone factor: They agree "that the role of the government in this case, as a party, is significant." Id. at 11 n.3.

The final factor to be considered is the extent to which requiring defendants to produce the withheld documents "would hinder frank and independent discussion regarding contemplated policies and decisions." Cipollone, 1987 WL 36515, at *2 (citation omitted). Defendants argue that any disclosure, even in camera, does violence to the underlying purpose of the deliberative process privilege. Defs.' Mem. [Dkt. No. 138] 11-12 (citing, inter alia, EPA v. Mink, 410 U.S. 73, 93 (1973), and Ethyl Corp. v. U.S. EPA, 25 F.3d 1241, 1249 (4th Cir. 1994)). That argument is in some sense valid—but it does nothing to assist the Court in differentiating between instances in which the privilege should be upheld from those in which it must yield. Effectively, defendants' argument treats the fourth Cipollone factor as an insurmountable bar, thereby converting the qualified privilege into an absolute privilege. That is not the law. Here, the magistrate judge found that any risk of hindering policymaking efforts was mitigated by the presence of a protective order "that would prevent public disclosure of the documents." Order [Dkt. No. 128] 3. As plaintiffs point out, the Fourth Circuit relied on similar reasoning in Cipollone itself. See 1987 WL 36515, at *3 (holding that the government's interest in nondisclosure was "de minimis at best" in part because "the materials would not be released to

the public under a protective order" and because the government "offered only conclusory allegations concerning any likely repercussions to any 'deliberative process'").

Based on a review of all the documents submitted in the representative sample, the Court concludes—with one categorical exception, as explained below—that the withheld documents should be produced to plaintiffs. Plaintiffs have identified discoverable, relevant information entirely within the government's control. The government is no stranger to this litigation; rather, all of the named defendants are governmental officers or agencies, and plaintiffs' claims go directly to the constitutionality and legality of those agencies' policies. And although the deliberative process privilege certainly serves to encourage open debate and better policymaking, the Court finds that any risks to those interests do not outweigh plaintiffs' need for the information, particularly in light of the protective order in place. For these reasons, plaintiffs have demonstrated a compelling need for most of the disputed documents, and defendants will be ordered to produce them.[19]

3.

There is one category of documents for which the Cipollone analysis produces a different result. Defendants point out that some of the documents in question relate to an ongoing, as-yet-

---

[19] Defendants argue that the magistrate judge erred by relying on a "blanket determination" that privilege analysis as to "330 documents could reasonably be accomplished by reviewing the contents of 33 documents." Defs.' Reply [Dkt. No. 146] 5; see also Defs.' Mem. [Dkt. No. 138] 14 & n.4 (arguing that the magistrate judge had approved plaintiffs' "fishing expedition" in doing so). But as explained above, defendants have not explained any way in which the random sample fails to adequately represent the broader universe of documents, and defendants' privilege log does not provide sufficient information from which the Court could perform such analysis. In short, the magistrate judge's solution—which, to reiterate, was jointly proposed by the parties—was a reasonable one in light of defendants' overbroad privilege assertion and constraints on time and resources.

unfinalized revision of AR 600-110.[20] That these draft or preparatory documents relate to an ongoing as opposed to a previous policymaking iteration is significant for two reasons. First, although it is conceivable that such documents could be relevant to plaintiffs' claims, they are certainly less likely to be relevant because they relate to a possible future version of the regulation rather than the current regulation that gives rise to the injuries at issue in this litigation. Moreover, requiring defendants to produce documents related to an ongoing debate would pose a substantial risk of restricting or interfering with that debate, which itself would have both practical as well as constitutional ramifications.[21] Because the documents related to the ongoing revision of AR 600-110 are less relevant and much more likely to subvert the purposes of the deliberative process privilege if required to be produced to plaintiffs, the Court concludes that plaintiffs have not demonstrated that the privilege should yield with respect to that category of documents.

One final clarification is necessary. During oral argument before the magistrate judge and this Court, the parties' attention was focused on one redacted document in particular. That document is an email chain in which several Army officers discuss whether it would be appropriate to grant an ETP to Harrison so that he could be commissioned as a JAG officer despite his HIV-positive status. The portion at issue is an email from Colonel Stephen Thomas that begins: "From a purely medical standpoint it is possible for someone with HIV to have a normal life expectancy, experience a high quality of life and health, and be productive."

---

[20] Although it is unclear exactly how many documents fall within this category, defendants have represented that they amount to "[a] relatively small volume" compared to all of the documents in dispute. Defs.' Mem. [Dkt. No. 138] 13.

[21] Defendants suggest, for instance, that an order requiring them to disclose documents related to an ongoing policy revision would violate the constitutional separation of powers. Defs.' Mem. [Dkt. No. 138] 14.

InCamera_149. The remainder of the email is redacted. Defendants argued that the redacted portion of Thomas's email referred to the ongoing AR 600-110 discussion and must be shielded from disclosure. But as plaintiffs correctly posited, that email is not itself part of the deliberative process with respect to the AR 600-110 revision. Instead, it involves a military officer pointing to the ongoing revision as a reason why the named plaintiff's request for an ETP should be denied. Although it is certainly deliberative, it is deliberative only with respect to the final decision in Harrison's case, not to the ongoing AR 600-110 revision. For that reason, it must be produced to plaintiffs.

In sum, defendants must produce to plaintiffs all of the withheld documents except for those documents related to the ongoing revision to AR 600-110, and defendants may not withhold any documents, like InCamera_149, that refer to any of the named plaintiffs or that are not genuinely part of the predecisional process with respect to the AR 600-110 revision. Likewise, to the extent the documents related to the AR 600-110 revision contain nondeliberative material—particularly statistics or facts—those documents should be produced to plaintiffs in redacted form. To ensure that defendants' assertion of the privilege as to AR 600-110's revision is appropriate, they will be ordered to produce to this Court, for <u>in camera</u> review, the "relatively small volume" of withheld documents in that category. Defendants must provide an appropriately detailed privilege log providing the relevant context for each withheld document and explaining why it should be withheld.

### III.

For the reasons stated above, defendants' objection will be sustained in part and overruled in part, the magistrate judge's order will be affirmed in part and reversed in part, and

18

plaintiffs' motion to compel will be granted in part and denied in part by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 22nd day of May, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge